In the Matter of the Estate of FRANCIS S. HUTCHINS, Deceased.

Surrogate's Court, New York County, February 7, 1930.

*Baldwin, Hutchins & Todd* [*Roger S. Baldwin* and *Matthew G. Herold* of counsel], for the executors.

*White & Case* [*Dudley Miller* of counsel], for Bankers Trust Company.

*Harrison, Elliott & Byrd* [*Robert W. B. Elliott* and *Hugh N. W. Ronalds* of counsel], for Sadie C. Hutchins.

*Dorothy Kenyon*, special guardian.

FOLEY, S. In this accounting proceeding, the court is asked to construe the testator's will and codicil thereto, and the effect of a separation agreement made by the testator and his wife, and certain other agreements between the executors and the widow and the adult next of kin. By the will the residuary estate is given to a trustee for the benefit of the widow during her life. Upon her death the trustee is directed to pay over the corpus to a sister and a brother of decedent in equal shares. If either one of these remaindermen die before the termination of the trust, viz., on the death of the widow, then the entire corpus is to be delivered to the survivor; and, if neither of them survive the widow, then the residuary estate is directed to be paid over and delivered to a class of contingent remaindermen, which will be referred to later in this decision. Subsequent to the execution of the will, testator entered into a separation agreement with his wife whereby he agreed to pay her the sum of $7,500 a year and made the payment thereof a charge upon his estate. The agreement provided that the wife accepted the payment in full discharge of all claims upon the testator, or in case of his death, upon his estate. The day after the execution of the separation agreement, the testator executed a codicil to his will, revoking all provisions contained in the will in favor of his wife, and substituting a provision creating a trust of a sufficient amount of principal to provide an income of $7,500 annually for her during her lifetime. Upon her death the trust fund is directed to be made a part of his residuary estate.

There is no reference in the codicil to the separation agreement, and the question arose as to whether the widow might claim the benefits both of the codicil and the agreement. After negotiations between the executors and the widow, an agreement was made wherein the widow renounced all claims under the will and codicil, and the executors agreed to set aside a fund of $160,000 to meet the payments directed by the separation agreement. This settlement agreement never received the approval of the surrogate. A fund has been created by the executors and is producing income in excess of the $7,500 payable to the widow. On the theory that the residue of the estate, after the setting aside of the above fund, was relieved of all trust provisions by the codicil, or by the renunciation by the widow of the trust provision for her, the executors have paid over to the brother and sister named in the will the sum of approximately $60,000. All adult parties have consented to this distribution. The trustee named in the will and codicil and the special guardian appointed to represent contingent remaindermen both contend, however, that the language of the codicil does not release any part of the residuary estate from the trust created by the will. An examination of both of these instruments shows that this contention is correct.

Paragraph 2 of the codicil reduces the benefits for the wife from the entire income of the residuary estate to the fixed sum of $7,500 annually. Paragraph 3 of the codicil, however, repeats the provisions for the payment over by the trustee of the residuary estate upon the death of the wife in words that are identical with those used in the will. If neither the sister nor the brother survive the widow, the corpus is given " to the person or persons who would have taken my real and personal property under the laws of the State of New York as now in effect in the event that I had survived my wife, my sister Fannie and my brother William, and then died intestate." It may be that the language of the will was repeated inadvertently by the testator or by the draftsman of the codicil. It should be noted, however, that the testator was himself an attorney, and the instruments should be construed in strict accordance with the language he used. His testamentary plan was one in which the trust of the entire residue was the principal factor, and termination of the trust definitely postponed until the widow's death. The result is that the trust created by the will is continued in full force and effect by the codicil, which only cuts down the amount of income payable to the widow. No agreement entered into by all of the adult parties in interest can destroy this trust. (*Matter of Wentworth*, 230 N. Y. 176.) In the latter decision the trustee was given discretion by the will to apply principal as well as income to the support of the beneficiary. The Court of Appeals held that " the trustee could not use this power, confided for the purpose specified, as a cover for some other and unauthorized purpose and intent."

In the present case the trustee cannot enable any of the parties in interest to secure the corpus of the residuary estate freed from the trust provisions and in a manner unauthorized by the will. The contingent remaindermen, who are not ascertainable until the death of the widow, cannot be deprived of their rights in the trust fund under any circumstances. That the remainder is contingent and not vested there can be no doubt. No part of the corpus can vest in the brother or sister under the language used unless either or both of them survive the widow. As stated in *Matter of Buechner* (226 N. Y. 440, at p. 444): " We need no canon of construction to justify that holding except, indeed the primary one, to which all others are subordinate, that the intention of the testator is to be sought in all his words, and, when ascertained, is to prevail." At this time it is unnecessary to determine the effective date for the ascertainment of the class of contingent remaindermen if the sister and brother should both predecease the widow. It may be those

answering the description of intestate distributees, within the limitations imposed by the testator *at his death*, or different class answering the description as of the date of *death of the widow*. (See *Matter of White*, 125 Misc. 348; affd., 213 App. Div. 82; following *Matter of Bump*, 234 N. Y. 60, and *United States Trust Co. of New York* v. *Taylor*, 232 id. 609; contra, *United States Trust Co. of New York* v. *Nathan*, 233 id. 505.) The failure of the testator to dispose of the rest of the income by codicil after cutting down the gift to his wife is not important. Section 63 of the Real Property Law, made applicable to this case by section 11 of the Personal Property Law (as amd. by Laws of 1929, chap. 229), specifically provides that in such a situation the undisposed of income shall belong to the persons presumptively entitled to the next eventual estate. In this case the sister, Fannie, and the brother, William, are presently entitled to the excess income. The entire residue was given to the Bankers' Trust Company, in trust, during the life of the wife. In neither the will nor the codicil is there a gift of any part of the corpus of the residue before the death of the widow. There is no invalidity in any part of the trust. It is measured by one life only, namely, that of the widow, and upon her death it will vest according to the provisions made in the codicil for survivorship.

The executors are also in error in their contention that the widow takes her income as a creditor under the settlement agreement and not as beneficiary under the codicil. They are to be commended for avoiding the possibility of double payments, but the testator's action in executing the codicil the day after the separation agreement was made, and the clarity of its terms, place the duty of making the payments upon the trustee. The direction in the codicil that the trustee pay to the widow annually the sum which, by the settlement agreement, was made a charge upon testator's estate after his death, takes this obligation out of the hands of the executors.

I hold, therefore: (1) That the executors should transfer to the trustee the residuary estate, including the funds set aside for the payment of the $7,500 a year to the widow; (2) that the excess income should be paid to the sister, Fannie, and the brother, William, as the persons presumptively entitled to the next eventual estate; (3) that the payments made out of the corpus of the residuary estate to the sister, Fannie, and the brother, William, were improper and should be recovered by the executors and then paid over to the Bankers' Trust Company as trustee; and (4) that the trustee should hold the entire residuary estate until the death of the widow and should then distribute it in accordance with the provisions made for survivorship in the codicil. Submit decree on notice construing the will and settling the account accordingly.