In the Matter of MARTHA FERRUGIA, Appellant, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. (Appeal No. 1.) [773 NYS2d 628]—Appeal from a judgment (denominated order) of the Supreme Court, Chautauqua County (Joseph Gerace, J.), entered September 4, 2002 in a proceeding pursuant to CPLR article 78. The judgment dismissed the petition.

In the Matter of MARTHA FERRUGIA, Appellant, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. (Appeal No. 2.) [773 NYS2d 628]—Appeal from a judgment (denominated order) of the Supreme Court, Chautauqua County (Joseph Gerace, J.), entered March 12, 2003 in a proceeding pursuant to CPLR article 78. The judgment granted petitioner's motion for leave to renew and, upon renewal, adhered to the court's original decision dismissing the petition.

It is hereby ordered that the judgment so appealed from be and the same hereby is affirmed without costs for reasons stated

in decision at Supreme Court (*Ferrugia v New York State Dept. of Health*, 192 Misc 2d 709 [2002]).

All concur except Wisner and Scudder, JJ., who dissent and vote to reverse in accordance with the following memorandum.

Wisner and Scudder, JJ. (dissenting). We respectfully dissent. In our view, Supreme Court should have granted the CPLR article 78 petition seeking to annul the determination denying petitioner's application for Medicaid benefits, and thus we vote to reverse. In denying the application, respondent Chautauqua County Department of Social Services (DSS) determined that the principal of an irrevocable trust established by petitioner in 1986 was an available resource for purposes of determining petitioner's eligibility for those benefits. The trust, by its terms, had terminated upon petitioner's entry into a nursing home before petitioner applied for Medicaid benefits.

The use of a "trigger trust" as a Medicaid planning device has since been prohibited by legislation, but that legislation does not apply retroactively to invalidate the trust herein (*see Bourgeois v Stadtler*, 256 AD2d 1095, 1096 [1998], *lv denied* 93 NY2d 805 [1999]). Pursuant to the terms of the trust, the trustees were to pay the income to petitioner along with such amounts of the principal as the trustees, in their sole discretion, deemed necessary and appropriate to maintain petitioner's standard of living. Paragraph 2 (b) of the trust provided that, upon petitioner's death or admission to a nursing home, "all distributions of income and principal to [petitioner] shall cease and [she] shall have no further legal or beneficial interest in this trust." Pursuant to paragraph 2 (f), the trustees were directed upon termination of the trust to distribute the accumulated income and remaining principal to petitioner's son and the children of petitioner's daughter. Petitioner reserved to herself "the right to change, at any time prior to the termination of this trust, paragraph '2 (f)' herein and to designate as remainder beneficiary or beneficiaries any person, persons or charitable entity, other than [petitioner's] spouse, [petitioner's] or her spouse's creditors, creditors of [petitioner's] estate, or [petitioner's] estate."

DSS determined that, because petitioner failed to exempt herself as a remainder beneficiary, she had the potential to receive the assets of the trust, and those assets therefore were available for purposes of calculating her eligibility for Medicaid benefits. In denying the petition, the court determined that "[t]he terms of this trust could reasonably be interpreted as having been intended to preserve sufficient funds for petitioner to pay for nursing home care if it became necessary. This would

explain the reservation of the right to name herself as beneficiary and the termination of the trust upon her entering into a skilled care facility" (*Ferrugia v New York State Dept. of Health,* 192 Misc 2d 709, 712 [2002]).

In our view, the court erred in its interpretation of paragraph 2 (f). That paragraph applies only to naming *remainder* beneficiaries. A remainder is "[a] future interest arising in a third person—that is, someone other than the creator of the estate . . .—who is intended to take after the natural termination of the preceding estate" (Black's Law Dictionary 1294 [7th ed 1999]). Thus, because petitioner is the grantor, she cannot be a remainder beneficiary, and the fact that she is limited to appointing remainder beneficiaries forecloses her from providing for the reversion of the trust property to herself. Whether the grantor created a remainder or a reversion is dependent upon the intention of the grantor, as expressed in the trust instrument (*see Richardson v Richardson,* 298 NY 135, 138 [1948]). Here, petitioner made a full disposition of her property through the trust. She surrendered control of the trust property to the trustees, and her only reservation of power to grant or assign an interest in the trust property was with respect to remainder beneficiaries. In addition, she made no provision for the return of the property during her lifetime. Thus, petitioner "evidenced her intention to give a remainder," not a reversion (*id.* at 144; *see Matter of Robinson v Marine Midland Trust Co. of N. N.Y.,* 37 AD2d 753 [1971]; *Conroy v Title Guar. & Trust Co.,* 271 App Div 200, 201 [1946]). We conclude that it therefore was petitioner's intent to create only a remainder interest in the trust property. In our view, the determination of DSS that the trust assets were available to petitioner is irrational, and we would grant the petition.

If we assume, arguendo, that the court properly determined that petitioner reserved the right to name herself as a beneficiary of the trust, we would conclude that such a determination would render the terms of the trust ambiguous, despite the court's conclusion otherwise. If petitioner had included herself as a beneficiary of the trust upon its termination, that provision would conflict with the provision in paragraph 2 (b) that, upon petitioner's death or admission to a nursing home, "all distributions of income and principal to [petitioner] shall cease and [petitioner] shall have no further legal or beneficial interest in this trust," and that conflict would create an ambiguity. Based on that ambiguity, we would then look to petitioner's intent by examining the trust instrument as a whole (*cf. Matter of Gouraud,* 85 AD2d 342, 344 [1982], *affd* 59 NY2d 925 [1983];

*Matter of Andrews v Trustco Bank,* 289 AD2d 910, 911-912 [2001]). Because the trust instrument provides that the trust and petitioner's "legal or beneficial interest" therein terminates upon petitioner's death or entry into a nursing home, at which time the property is to be distributed to the remainder beneficiaries, we conclude that petitioner intended to divest herself of assets in order to be eligible for Medicaid benefits to pay for her nursing home care (*see generally Bourgeois,* 256 AD2d at 1096). By operation of the trust, petitioner therefore had no resources in her control at the time she applied for Medicaid benefits (*see Matter of Little,* 256 AD2d 1152, 1153 [1998], *lv denied* 93 NY2d 807 [1999]; *see also* 18 NYCRR 360-4.4 [b] [1]). Thus, even under this alternative analysis, we would conclude that petitioner was "eligible for medical assistance under the standards in effect at the time of [her] application" (*Bourgeois,* 256 AD2d at 1096), and we would therefore reverse and grant the petition. Present—Pine, J.P., Wisner, Scudder, Gorski and Lawton, JJ.